```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
SIMPLY NATURAL FOODS LLC,

                Plaintiff,            MEMORANDUM & ORDER
                                      11-CV-3911(JS)(SIL)
        -against-

POLK MACHINERY CO., INC.,

                Defendant.
----------------------------------X
APPEARANCES
For Plaintiff:      Nicholas J. Fortuna, Esq.
                    Paula Lopez, Esq.
                    Allyn & Fortuna
                    1010 Avenue of the Americas, 3rd Fl.
                    New York, NY 10018

For Defendant:      Richard D. Grossman, Esq.
                    211 West Wacker Drive, Suite 710
                    Chicago, IL 60606
```

SEYBERT, District Judge:

This case concerns an agreement to purchase food packaging equipment. Plaintiff Simply Natural Foods, LLC ("Simply Natural") sells candy and other confectionery food products. Defendant, Polk Machinery Co., Inc. ("Polk") refurbishes and resells manufacturing equipment used in the food industry. The parties have both cross-moved for summary judgment, each arguing that the other breached their agreement. (Docket Entries 46, 50.) As discussed below, Polk's motion for summary judgment is DENIED and Simply Natural's motion for partial summary judgment is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

In February 2009, Simply Natural entered into an agreement with Polk to purchase automatic bagging equipment for its production line. (Am. Compl., Docket Entry 2, ¶¶ 12-13.) The equipment was to be used to package and weigh confectionary food products on Simply Natural's production line. (Affirmation of Abraham Brach, Docket Entry 48, ¶ 7.) On February 19, 2009, a Polk representative confirmed that the equipment consisted of the following items: a twin tube Triangle Form, Fill & Seal device (the "machine"), used to package food products with two 6-head Triangle Selectacom 21 scale systems (the "scale systems"); and two bucket elevators, which would be used to feed products from the bagger to the scale systems. (See Am. Answer, Docket Entry 9, Ex. A.) The price of the equipment was $70,000, including $10,000 for each bucket elevator. (Brach Affirm., Docket Entry 48, ¶ 8.)

Polk's offer called for a deposit equal to fifty percent of the total purchase price, which Polk promised would be refunded if it could not make the machine work as promised. (Am. Answer Ex. A.) Polk guaranteed that upon delivery the machine would be able to package at least fifty bags per minute. (Am. Answer Ex. A.) Because the machine was refurbished, however, Polk explained

---

[1] The following facts are drawn from the parties' 56.1 statements and their affidavits and other evidence in support.

that it would first need to be tested by a company called S&S Packaging ("S&S") in Racine, Wisconsin. (Am. Answer Ex. A.) Polk's offer stated: "When the machine is completed you will come and watch it run and approve it at S & S Packaging in Racine, WI. Final Payment is due after you have signed off on the machine and before shipping." (Am. Answer Ex. A.) Polk concluded its offer letter by stating "until we actually start to run the machine[,] we really don't know what kind of problems we may run into." (Am. Answer Ex. A.) In April 2009, Simply Natural sent its deposit for the equipment, and Polk shipped it to S&S in Wisconsin for testing. (Def.'s 56.1 Stmt., Docket Entry 37-1, ¶ 7.)

Pat Schroder, the owner and operator of S&S, claims in a sworn affidavit that he called Polk's owner, Steven Grossman, and told him that the equipment was ready to use, but that Simply Natural sent him the wrong film needed to make the bags Simply Natural desired. (Def.'s 56.1 Stmt. ¶ 10.) Grossman called Simply Natural numerous times between October 2009 and January 2010, but Simply Natural did not respond to his calls. (Def.'s 56.1 Stmt. ¶ 11.) During this time, the equipment remained on S&S's premises. S&S had not yet been paid, however, because its fee was part of the balance of the purchase price, which Simply Nature had not paid. (Def.'s 56.1 Stmt. ¶ 12.)

In March 2010, Grossman emailed Simply Natural to inform them that S&S planned to "seize the machine for nonpayment" because

3

of its failure to respond.  (Am. Answer Ex. B.)  Under pressure, Simply Natural paid S&S $10,000--a portion of the remaining $25,000 balance--to keep the equipment from being sold and to satisfy S&S's fee.  (Am. Answer Ex. B; Def.'s 56.1 Stmt. ¶ 14.)

In October 2010, Schroder advised Simply Natural that the machine was operating according to specifications and was ready to be inspected by Simply Natural.  (Def.'s 56.1 Stmt. ¶ 16; Brach Affirm. ¶ 15.)  Instead of coming to inspect the machine, however, Simply Natural tendered the balance of the purchase price and arranged to have the equipment shipped to its facility.  (Def.'s 56.1 Stmt. ¶ 17.)

The equipment arrived at Simply Natural's facility dismantled in three sealed containers.  (Brach Affirm. ¶ 16.)  The largest container weighed approximately six tons.  (Soriano Aff., Docket Entry 53, ¶ 4.)  At the time, Simply Natural claims that it was "working on another project," and therefore did not start assembling the equipment immediately.  (Brach Affirm. ¶ 17.)  When it began assembling the equipment, however, Simply Natural claims it discovered "the parts . . . included with the machine were old and decrepit."  (Brach Affirm. ¶ 17.)  Simply Natural contacted Polk in February 2011, five months after S&S shipped the equipment, complaining that the machine did not work.  (Def.'s 56.1 Stmt. ¶ 18.)

4

After receiving Simply Natural's Complaint, Polk recommended that Simply Natural engage Edison Ramirez, a mechanic experienced with Triangle brand baggers. (Brach. Affirm. ¶ 19; Def.'s 56.1 Stmt. Ex. B, Grossman Aff. ¶ 20.) The parties dispute what happened next. Polk claims Simply Natural had set up the machine incorrectly and that Ramirez was able to make the machine run at Polk's promised speed of fifty bags per minute. (Grossman Aff. ¶¶ 21-22.) Simply natural claims that Ramirez confirmed that it was not possible to run the machine in the condition it arrived in. (Brach Affirm. ¶ 20.) Ramirez submitted an affidavit in which he asserted that he was unable to make the machine work in February 2011 because: (1) the machine had been set up incorrectly, (2) the machine's battery needed to be replaced, and (3) one side of the machine required minor repairs. (Def.'s 56.1 Stmt. Ex. C, Ramirez Aff. ¶¶ 5-8.) But Ramirez affirms that he was able to make the machine "fully functional" during a "subsequent visit." (Ramirez Aff. Ex. C ¶ 9.)

It is undisputed that Polk never sent Simply Natural the bucket elevators (the "buckets") that it ordered and paid for. The buckets are used to feed food products to the machine to be bagged. (Brach Affirm. ¶¶ 27-28.) Grossman testified during his deposition that he did not become aware that the buckets were not shipped to New York until this lawsuit was filed in August 2011. (Grossman Dep., Docket Entry 47-4, 56:2-10.) When Polk learned

5

the Bucket Elevators were missing, Polk told Simply Natural that it could pick up the Bucket Elevators from an address in Chicago. (See Brach Affirm. Ex. H.) But Simply Natural refused to ship the buckets at its own expense, taking the position that they should have been picked up from S&S's facility in Wisconsin along with the rest of the equipment. (See Brach Affirm. Ex. H.) Grossman explained that he did not ship the bucket elevators because (1) Simply Natural delayed notifying Polk that the bucket elevators were missing and (2) because Simply Natural filed a lawsuit against Polk. (See Brach Affirm. Ex. B.) Grossman testified during his deposition that, "the whole thing was up in the air at that point. I froze the deal." (Grossman Dep. 56:18-20.)

Simply Natural filed this action against Polk alleging causes of action for breach of contract and breach of express and implied warranties. (Am. Compl. ¶¶ 28-42.) Both parties now move for summary judgment. Simply Natural moves for partial summary judgment on the limited ground that Polk breached the agreement by failing to provide the buckets that Simply Natural ordered and paid for. (Pl.'s Br., Docket Entry 49, at 11.) Polk also moves for summary judgment arguing that: (1) Simply Natural's case should be dismissed because it generally exercised bad faith during the execution of the deal[2]; (2) Simply Natural accepted the machine

---

[2] The Court declines to consider Polk's unsupported argument that Simply Natural exercised bad faith throughout the deal.

and was thereafter precluded from rejecting it; (3) Simply Natural's failure to inspect the machine should bar its breach of warranty claims; and (4) Simply Natural failed to mitigate its damages with respect to the buckets it never received. (Def.'s Br., Docket Entry 50, at 2.)

## DISCUSSION

The Court will first address the applicable legal standard on a motion for summary judgment before turning to the parties' arguments.

I. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary

---

Addressing Polk's bad faith argument would require an inherently fact-intensive inquiry, which is better suited for a jury. It would be inappropriate for the Court to parse through every action the parties took and decide this case based upon the wholesale conclusion that one party generally exercised bad faith over a two-year period.

7

judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256). "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials will not suffice." (citation omitted)); Weinstock, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact."). "The same standard applies where, as here, the parties filed cross-motions for summary judgment . . . ." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001) (citing Terwilliger v. Terwilliger, 206 F.3d 240, 244 (2d Cir. 2000)). Thus, even if both parties move for summary judgment and assert the absence of any genuine issues of material fact, "a district

court is not required to grant judgment as a matter of law for one side or the other." Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993). "Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales, 249 F.3d at 121 (citation omitted).

"The same standard applies where, as here, the parties filed cross-motions for summary judgment . . . ." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001) (citing Terwilliger v. Terwilliger, 206 F.3d 240, 244 (2d Cir. 2000)). Thus, even if both parties move for summary judgment and assert the absence of any genuine issues of material fact, "a district court is not required to grant judgment as a matter of law for one side or the other." Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993). "Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales, 249 F.3d at 121 (citation omitted).

II. Rejection of Goods within a Reasonable Amount of Time

Polk argues that because Simply Natural did not reject the equipment ordered from Polk within a reasonable time after delivery, as required by Sections 2-602(1) and 2-607(3)(a) of the New York Uniform Commercial Code ("N.Y. U.C.C."), summary judgment should be granted in Polk's favor. (Def.'s Br. at 8-11.)

9

Plaintiff argues in opposition that whether three months was an unreasonable period to retain the equipment without objecting to its condition presents a jury question. (Pl.'s Opp. Br., Docket Entry 54, at 11-17.)

Section 2-607(3)(a) states that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." N.Y. U.C.C. § 2-607(3)(a); See also N.Y. U.C.C. § 2-608(2) (allowing a "reasonable time" for revocation of acceptance) Similarly, N.Y. U.C.C. § 2-602(1), "a buyer is given a reasonable time to inspect goods upon their receipt and to reject them by seasonable notification if they are found to be non-conforming." Sherkate Sahami Khass Rapol (Rapol Const. Co.) v. Henry R. Jahn & Son, Inc., 701 F.2d 1049, 1051 (2d Cir. 1983). Whether the buyer communicated notice of breach to the seller within a reasonable amount of time depends upon the "the nature, purpose, and circumstances" of the buyer's act. N.Y. U.C.C. § 1-205. Thus, determining whether a particular time period was reasonable is generally a question for the jury. See, e.g., RIJ Pharm. Corp. v. Ivax Pharm., Inc., 322 F. Supp. 2d 406, 412-14 (S.D.N.Y. 2004) ("Absent exceptional circumstances, whether an action has been taken within a 'reasonable time' is a question of fact.") (quoting Sherkate, 701 F.2d at 1051). For example, in Sherkate the Second Circuit Court of Appeals could not decide as a matter of law

10

whether goods received and retained for approximately two months were rejected within a reasonable period of time by the plaintiff. Sherkate, 701 F.2d at 1051-52. There, the plaintiff placed an order for dump truck trailer frames with defendant. When the frames arrived, they remained packaged for two and half months. But when the plaintiff finally removed the packaging, it took him a number of days to discover that the defendant shipped the wrong frames. The court found that the case fell within the general rule that a jury must determine whether the goods were retained for an unreasonable period of time before they were rejected. The Court reasoned that: (1) the sale did not involve perishable goods, or goods that fluctuated in price; (2) that given the nature of the dump truck trailer frames, the variance between what plaintiff ordered and what he received "might well have gone unnoticed for some time by an inexpert observer"; and (3) there "was no showing of substantial prejudice to [the defendant]." Id. at 1052. Similarly, in Levin v. Gallery 63 Antiques Corporation, the district court explained that "Defendants have fewer of the typical reasons to complain of untimely notification" because the goods at issue was non-perishable sculptures, the variance from the terms of the sales contract might well have gone unnoticed for some time by an inexpert observer, and because there was "no showing of substantial prejudice to Defendants from the delayed rejection." Levin v. Gallery 63 Antiques Corp., No. 04-CV-1504, 2006 WL

2802008, at *19 (S.D.N.Y. Sept. 28, 2006) (internal quotation marks and citations omitted). However, "when only one inference may be drawn as to the reasonableness of the time in which defendant rejected the goods, it becomes a question of law." Tabor v. Logan, 114 A.D.2d 894, 495 N.Y.S.2d 67 (1985) (holding that the plaintiff waited an unreasonably long time to reject goods when he sought to rescind the sale in his answer to the complaint, over a year after the goods were delivered); Delta Tanning Corp. v. Samber Leather Fashions, Ltd., 654 F. Supp. 1285, 1286-87 (S.D.N.Y. 1987) (a buyer waited an unreasonable amount of time to reject goods when it was alerted to a defect but did not notify the seller for six months).

Here, Simply Natural arranged for the equipment to be shipped to New York in October 2010 but did not complain about defects until in February 2011, five months later. The equipment arrived in three sealed containers, the largest of which weighed six tons. Simply Natural vaguely claims that it could not inspect the equipment because it was "working on another project." Although Simply Natural's excuse is dubious, the Court cannot decide whether reasonable notice of a defect was given to Polk. Just as in Sherkate, the equipment Polk sold was not perishable; there was no showing of substantial prejudice by Polk; and the alleged latent defects in the equipment could have gone unnoticed by Simply Natural for some time, even if Simply Natural had inspected the equipment when it arrived. In addition, it is

12

unclear as a factual matter when Simply Natural started assembling the equipment. Therefore, the Court must be guided by the general rule in this case that a jury must determine whether notice was given within a reasonable amount of time.

III. <u>Simply Natural's Failure to Inspect the Equipment in Wisconsin</u>

The parties agreement stated that "[w]hen the machine is completed you will come and watch it run and approve it at S & S Packaging in Racine, WI." (Am. Answer Ex. A.) Final Payment was then due "after [Simply Natural] signed off on the machine and before shipping." (Am. Answer Ex. A.) But when Polk notified Simply Natural in October 2010 that the equipment was ready to be inspected, Simply Natural merely paid Polk the balance of the purchase price and arranged for the equipment to be shipped to New York. Polk now argues that Simply Natural should be barred from pursuing its breach of warranty claims under N.Y. U.C.C. § 2-316(3)(b) because the parties' contract contemplated that Simply Natural would inspect the equipment at S&S's facility in Wisconsin before it was shipped, but Simply Natural failed to do so. (Def.'s Br. at 11.) The Court disagrees.

N.Y. U.C.C. § 2-316(3)(b) states as follows:

> [W]hen the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an

13

>  examination ought in the circumstances to have
>  revealed to him.

It is clear from the terms of the statute that § 2-316 only applies to situations in which the buyer inspected goods <u>before</u> it entered into the contract.[3]  See <u>Dempsey v. Rosenthal</u>, 121 Misc. 2d 612, 618, 468 N.Y.S.2d 441, 445 (N.Y. Civ. Ct., N.Y. Co. 1983) (discussing the sufficiency of an inspection of goods prior to contract formation); <u>Bazzini v. Garrant</u>, 116 Misc. 2d 119, 121, 455 N.Y.S.2d 77, 79 (Dist. Ct., Suffolk Co. 1982) (holding that N.Y. U.C.C. 2-316(b) did not apply because "the examination of the goods . . . was after the sale").  Since the parties' agreement called for Simply Natural to inspect the equipment <u>after</u> it was in working condition, § 2-316(3)(b) is inapplicable.  Moreover, even if the agreement had required Simply Natural to inspect the goods before the contract was executed, the comment to § 2-316 makes clear that "[i]n order to bring the transaction within the scope of 'refused to examine' in paragraph (b), it is not sufficient that the goods are available for inspection[, rather t]here must

---

[3] The comment to Section 2-316 supports this conclusion.  The comment makes clear that "warranties may be excluded or modified by the circumstances where the buyer examines the goods or a sample or model of them <u>before</u> entering into the contract."  N.Y. U.C.C. § 2-316(8) (emphasis added).  The comment goes on to explain that the term "[e]xamination . . . <u>is not synonymous with inspection before acceptance or at any other time after the contract has been made</u>. It goes rather to the nature of the responsibility assumed by the seller at the time of the making of the contract."  <u>Id.</u> (emphasis added).

. . . be a demand by the seller that the buyer examine the goods fully." N.Y. U.C.C. Law § 2-316(8); see also Potler v. MCP Facilities Corp., 471 F. Supp. 1344, 1350 (E.D.N.Y. 1979) (explaining that the seller's failure to demand that buyer test a product prior to the product's use kept the transaction outside the scope of N.Y. U.C.C. 2-316(b)). Here, Polk never demanded that Simply Natural send a representative to examine the equipment after Polk sent notice that the equipment was in working order.

Thus, Polk's motion for summary judgment is DENIED.

## IV. The Bucket Elevators

Simply Natural moves for partial summary judgment on the limited ground that Polk breached the agreement by failing to deliver the buckets that Simply Natural ordered and paid for. (Pl.'s Br. at 11-13.) Polk argues in opposition that: (1) Simply Natural, not Polk, was responsible for shipping the bucket elevators under the terms of the agreement and (2) there is a material factual dispute concerning the whereabouts of the buckets when the equipment was shipped to Simply Natural. (Def.'s Opp. Br., Docket Entry 51, at 2-4.)

Simply Natural seeks to recover damages under N.Y. U.C.C. § 2-711 for Polk's failure to "make delivery" of the buckets, but the parties' contract was silent about who was obligated to deliver the goods. Polk's offer letter merely stated "[f]inal payment is due after you have signed off on the machine

15

and before shipping." (Am. Answer Ex. A.) A seller's delivery obligations depend upon whether the parties' contract was a destination contract or a shipment contract. See Windows, Inc. v. Jordan Panel Systems Corp., 177 F.3d 114, 116-17 (2d Cir. 1999). A destination contract "arises where 'the seller is required to deliver at a particular destination,' while a "shipment contract arises where 'the seller is required . . . to send goods to the buyer and the contract does not require him to deliver them at a particular destination." Id. at 116 (emphasis in original) (quoting N.Y. U.C.C. §§ 2-503(3), 2-504). When the terms of the agreement are in ambiguous--as they are here--"there is a strong presumption under the U.C.C. favoring shipment contracts." Id. at 117. Thus, in order to properly deliver the equipment Simply Natural ordered, Polk was required to package the equipment, put it in the possession of a carrier, and notify Simply Natural of the shipment. See N.Y. U.C.C. § 2-504. Polk failed to fulfill these obligations. It is undisputed that the bucket elevators were never sent to Simply Natural. Moreover, it is inconsequential that S&S--a third party--packaged the goods and gave them to Simply Natural's shipping company. Polk was still responsible fulfilling its delivery obligations under the terms of the contract and N.Y. U.C.C. § 2-504. See Lopez v. Henry Isaacs, Inc., 210 A.D. 601, 603, 206 N.Y.S. 405, 405 (1st Dep't 1924) (holding that when goods intended for the buyer were shipped to a third party, title did

16

not pass to the buyer because the defendant still retained the power to stop delivery).

Polk contends that there is a material factual dispute concerning the whereabouts of the buckets as the parties' deal unfolded. Polk's owner, Steven Grossman, testified that he did not know the buckets were not shipped to Simply Natural until this lawsuit was filed in August 2011. But it is undisputed that when Simply Natural notified Polk that the buckets were missing, Polk told Simply Natural it could pick up the buckets from an address in Chicago. Polk now argues that there is a material factual dispute about where the bucket elevators were in October 2010, when the equipment was picked up from S&S's facility in Wisconsin. (Def.'s Opp. Br. at 4.) Polk implies that it may have shipped the buckets to S&S's facility in October 2010 and that Simply Natural's shipping company--not Polk--may have been at fault for failing to retrieve them. (See Def.'s Opp. Br. at 4.) Although the Court must construe the facts in the light most favorable to the non-moving party, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). Here, Polk's unsupported theory that it shipped the bucket elevators to Wisconsin does not create a genuine factual dispute. Without supporting evidence, Polk is only offering speculation, which the Court will not consider. And even if Polk did ship the

buckets to Wisconsin, Polk was obligated under N.Y. U.C.C. § 2-504 was to "put the goods in possession of a carrier," and it failed to do so.

Polk also argues that Simply Natural's breach of contract claim with respect to the buckets fails because Simply Natural did not notify Polk about the missing buckets until seven months after it received the goods. (Def.'s Br. at 8-10.) Polk relies on N.Y. U.C.C. § 2-607(3)(a), which requires the buyer to notify the seller of any breach "within a reasonable time," and N.Y. U.C.C. § 2-608(2), which similarly requires the buyer to revoke acceptance of goods "within a reasonable time after the buyer discovers or should have discovered the ground for it . . . ." However, both N.Y. U.C.C. § 2-607 and § 2-608 only apply to goods that were actually delivered to the buyer. See Atronic Int'l, GmbH v. SAI Semispecialists of Am., Inc., No. 03-CV-4892, 2006 WL 2654827, at *9 (E.D.N.Y. Sept. 15, 2006) (holding that "[t]he plain language of § 2-607 indicates that the clause only prohibits untimely claims of breach pertaining to the specific goods that have actually been received."); Sta-Rite Indus., LLC v. Franklin Elec. Co., 519 F. App'x 370, 376-77 (6th Cir. 2013) (collecting cases). Although the buckets were meant to attach to the machine, the contract is explicit that they were separate items that Simply Natural paid $10,000 each for and never received. Therefore, both N.Y. U.C.C. § 2-607 and § 608 are inapplicable.

A.  Mitigation of Damages

Simply Natural claims that it is entitled to upwards of $150,000 in damages for Polk's failure to deliver the buckets, which includes the replacement cost of the buckets and consequential damages for unfilled orders. (Pl.'s Br. at 15.) As a threshold matter, the Court notes that Simply Natural has not submitted any evidence supporting it damages calculation and therefore summary judgment on the issue of damages is precluded.

Polk argues that Simply Natural's damages claim is barred because it failed to mitigate its damages by paying to have the buckets picked up from Polk's facility in Chicago. (Def.'s Opp. Br. at 9.) "The general rule in federal courts is that a failure to plead an affirmative defense results in a waiver." Travellers Intern., A.G. v. Trans World Airlines, Inc., 41 F.3d 1570, 1580 (2d Cir. 1994); Tufano v. Riegel Transp., Inc., No. 03-CV-0977, 2006 WL 335693, at *6 (E.D.N.Y. Feb. 11, 2006) (noting that the defendant waived its failure to mitigate defense by not including it in its answer). Here, Polk did not plead failure to mitigate damages in its Answer. If Polk believes it is entitled to amend its Answer at this late stage, it must file a motion to amend and show good cause for its delay pursuant to Federal Rule of Civil Procedure 16(b). See F.D.I.C. v. Horn, No. 12-CV-5958, 2015 WL 1611995, at *10 (E.D.N.Y. Apr. 8, 2015) ("Parties seeking to amend pleadings after the deadline to do so has expired must

19

first satisfy the 'good cause' threshold under Rule 16(b) to amend a scheduling order."). Otherwise, Polk's failure to mitigate defense will be deemed waived.

Simply Natural is therefore GRANTED partial summary judgment on the issue of liability for Polk's failure to provide Simply Natural with the buckets it ordered. Simply Natural's motion is otherwise DENIED to the extent they have not proved entitlement to damages as a matter of law.

<u>CONCLUSION</u>

For the forgoing reasons, Simply Natural's partial motion for summary judgment (Docket Entry 46) is GRANTED IN PART and DENIED IN PART. Simply Natural's motion is specifically GRANTED on the issue of liability for Polk's failure to provide the buckets Simply Natural ordered, but otherwise DENIED. Polk's motion for summary judgment (Docket Entry 50) is DENIED.

SO ORDERED.

<u>/s/ JOANNA SEYBERT</u>
Joanna Seybert, U.S.D.J.

Dated: September __22__, 2015
       Central Islip, New York